1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TUNI DEE HERNANDEZ,                          No.  2:14-cv-2142-CKD

12              Plaintiff,

13        v.                                       ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

22   summary judgment and grant the Commissioner's cross-motion for summary judgment.

23   I.        BACKGROUND

24        Plaintiff, born February 6, 1970, applied on March 22, 2012 for DIB and SSI, alleging

25   disability beginning October 28, 2009.  Administrative Transcript ("AT") 14, 33, 175-190.

26   Plaintiff alleged she was unable to work due primarily to arthritis and pain in her back and right

27   ////

28   ////

                                                    1

ankle. AT 210, 221.  In a decision dated May 9, 2013, the ALJ determined that plaintiff was not

disabled.[1]  AT 12-24**.**  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 29, 2009, the alleged onset date.
>
> 3.   The claimant has the following severe impairments: osteoarthritis of the right ankle; degenerative disc disease of the thoracic spine; and a depressive disorder [not otherwise stated]**.**
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can lift or carry 10 pounds frequently, 20 pounds occasionally, stand or walk for a total of 2 hours in an 8-hour workday and sit for a total of 6 hours out of an 8-hour workday. The claimant must be able to alternately sit or stand to alleviate discomfort, she can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders.   The claimant should avoid extreme cold, vibrations, fumes, odors, dust, gases, and the claimant can perform simple and repetitive tasks with no high production work.

6.  The claimant is unable to perform any of her past relevant work.

7.  The claimant was born on February 6, 1970, and was 39 years old, which is defined as a younger individual age 18-44, on the date of the alleged disability onset date.

8.  The claimant has a limited education and is able to communicate in English.

9.  The claimant has no job skills that are transferable to other work within her residual functional capacity.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2009, through the date of this decision.

AT 14-23.

II.      ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) relied on improper Vocational Expert ("VE") testimony in determining that there were jobs available in significant numbers that plaintiff could perform given her functional limitations; (2) improperly assessed the medical opinion evidence in the record when determining plaintiff's residual functional capacity ("RFC"); and (3) improperly determined plaintiff's testimony to be not credible.

/////

/////

/////

3

1    III.    LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13         The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18   administrative findings, or if there is conflicting evidence supporting a finding of either disability

19   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

1    IV.    ANALYSIS

2          A.    The ALJ Properly Relied on the VE's Testimony

3          First, plaintiff argues that the ALJ could not properly rely on the VE's testimony because

4    the VE stated that plaintiff had the RFC to perform the occupations of telephone quotation clerk,

5    addresser, and order clerk, which was inconsistent with the definition for these three occupations

6    in the Dictionary of Occupational Titles ("DOT")[2] because these occupations all require a

7    reasoning ability higher than what the ALJ attributed to plaintiff through his RFC determination.

8    The DOT states that a claimant must be able to perform "Level 3 Reasoning"[3] in order to perform

9    the functions of a telephone quotation clerk or order clerk, and "Level 2 Reasoning"[4] in order to

10   perform the functions of an addresser.  Plaintiff argues that the mental limitations the ALJ

11   ascribed to her fell below the reasoning requirements for jobs at Level 2 Reasoning and above,

12   therefore making the ALJ's failure to ask the VE to explain why a person with plaintiff's mental

13   limitations could nevertheless meet the reasoning demands of the DOT's Levels 2 and 3 an error

14   that requires remand.

15         At step five of the analysis, the Commissioner has the burden "to identify specific jobs

16   existing in substantial numbers in the national economy that [the] claimant can perform despite

17   [her] identified limitations."  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20

18

19   [2]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational
     Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of
20   a claimant's past work, and in evaluating whether the claimant is able to perform other work in
     the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT
21   classifies jobs by their exertional and skill requirements.   The DOT is a primary source of
     reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).
22

23   [3] Per the DOT, occupations demanding Level 3 Reasoning require that a claimant be able to:
     "Apply commonsense understanding to carry out instructions furnished in written, oral, or
24   diagrammatic form.  Deal with problems involving several concrete variables in or from
     standardized situations."  Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (4th
25   ed. 1991).

26
     [4] Per the DOT, occupations demanding Level 2 Reasoning require that a claimant be able to:
27   "Apply commonsense understanding to carry out detailed by uninvolved written or oral
     instructions.  Deal with problems involving a few concrete variables in or from standardized
28   situations."  Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (4th ed. 1991).

5

1    C.F.R. § 416.920(g).  After determining the claimant's RFC, the ALJ then must consider what

2    occupations the claimant is possibly able to perform in light of her limitations.  See 20 C.F.R. §

3    416.966.  "In making this determination, the ALJ relies on the DOT, which is the SSA's 'primary

4    source of reliable job information' regarding jobs that exist in the national economy."  Zavalin v.

5    Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th

6    Cir.1990)); see also 20 C.F.R. §§ 416.969, 416.966(d)(1).  "In addition to the DOT, the ALJ relies

7    on the testimony of vocational experts who testify about specific occupations that [the] claimant

8    can perform in light of [her] residual functional capacity."  Zavalin, 778 F.3d at 864 (citing 20

9    C.F.R. § 416.966(e)).  As the Ninth Circuit Court of Appeals recently stated:

10              When there is an apparent conflict between the vocational expert's testimony and
11              the DOT—for example, expert testimony that a claimant can perform an
                occupation involving DOT requirements that appear more than the claimant can
12              handle—the ALJ is required to reconcile the inconsistency.  Massachi v. Astrue,
                486 F.3d 1149, 1153-54 (9th Cir. 2007).  The ALJ must ask the expert to explain
13              the conflict and "then determine whether the vocational expert's explanation for
                the conflict is reasonable" before relying on the expert's testimony to reach a
14              disability determination.  Id.; see also Social Security Ruling 00-4P, 2000 WL
                1898704, at *2 (Dec. 4, 2000).  The ALJ's failure to resolve an apparent
15              inconsistency may leave us with a gap in the record that precludes us from
16              determining whether the ALJ's decision is supported by substantial evidence.  See
                Massachi, 486 F.3d at 1154 (stating that "we cannot determine whether the ALJ
17              properly relied on [the vocational expert's] testimony" due to unresolved
                occupational evidence).
18

19   Zavalin, 778 F.3d at 846.

20              As plaintiff correctly notes, the Ninth Circuit Court of Appeals recently held that an RFC

21   finding limiting a claimant to performing "simple and routine work tasks" is inconsistent with the

22   demands of jobs classified by the DOT to require Level 3 Reasoning, and that an ALJ's failure to

23   reconcile this apparent conflict by asking a VE to explain why a claimant with such a mental

24   limitation could nevertheless perform work at this level is error.  Zavalin, 778 F.3d at 847.

25   Accordingly, plaintiff's argument that the ALJ erred by failing to resolve the inconsistency

26   between the VE's testimony that plaintiff had the RFC to perform the occupations of telephone

27   ////

28   ////

1    quotation clerk and order clerk and the DOT's determination that these jobs demand the ability to

2    perform Level 3 Reasoning has merit.[5]

3         Nevertheless, the Ninth Circuit Court of Appeals' decision in Zavalin still leaves

4    unresolved the question of whether a RFC limitation to "simple and repetitive tasks with no high

5    production work" conflicts with the DOT's description of jobs necessitating the ability to perform

6    Level 2 Reasoning.  Here, given that the VE testified that plaintiff could also perform the job of

7    addresser, which requires Level 2 Reasoning, the question becomes whether the ALJ's error as to

8    the other two representative occupations was harmless.  See Molina v. Astrue, 674 F.3d 1104,

9    1111 (9th Cir. 2012) ("[W]e may not reverse an ALJ's decision on account of an error that is

10   harmless.").  If the VE's testimony that a person with plaintiff's mental RFC could perform work

11   as an addresser was consistent with the DOT's determination that the job requires Level 2

12   Reasoning, then the ALJ's error was harmless because he could have properly relied on the VE's

13   testimony regarding this occupation to determine that there were jobs that plaintiff could still

14   perform at step five.  However, if there was an inconsistency between the VE's testimony and the

15   DOT's Level 2 Reasoning requirement for an addresser, then the ALJ's step five analysis was

16   erroneous and remand is necessary.  The court now turns to this issue.

17        Defendant argues that there is no apparent inconsistency between the VE's testimony that

18   plaintiff could perform the job functions of an addresser given her mental RFC limiting her to

19   "simple and repetitive tasks with no high production work" and the DOT's requirement that a

20   claimant be able to perform Level 2 Reasoning.  In support of this argument, defendant refers to

21   several district court cases from within the Ninth Circuit holding that claimants whose RFC limits

22   them to performing only simple tasks performed at a routine or repetitive pace are able to perform

23   jobs listed in the DOT with a Level 2 Reasoning requirement.  ECF No. 17 at 10 (citing Meissl v.

24   Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005), Salazar v. Astrue, 2008 WL 4370056 (C.D. Cal.

25   2008), and Tudino v. Barnhart, 2008 WL 4161443 (S.D. Cal. 2008)).  Indeed, these cases indicate

26

27   ---
     [5] Defendant concedes in its cross-motion for summary judgment that the VE's testimony that
     plaintiff could perform work as a telephone quotation clerk and an order clerk conflicted with the
     DOT's definitions for these jobs, which required that plaintiff be able to perform Level 3
28   Reasoning.  ECF No. 17 at 10.

1    that there is a general consensus within the Ninth Circuit and elsewhere that a limitation to simple

2    and repetitive tasks is consistent with the jobs requiring Level 2 Reasoning.  See, e.g., Hackett v.

3    Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding Level 2 Reasoning to be consistent with

4    a limitation to simple, routine work tasks); Salazar, 2008 WL 4370056, at *7 (C.D. Cal. 2008)

5    (noting that "[n]umerous courts" within the Ninth Circuit and elsewhere have rejected the

6    argument "that a limitation to simple, repetitive tasks is inconsistent with Level 2 reasoning

7    ability" and citing to cases); Isaac v. Astrue, 2008 WL 2875879, *3-*4 (E.D. Cal. July 24, 2008);

8    Meissl, 403 F. Supp. 2d at 984-85.  The court finds the reasoning in these cases persuasive.

9         Plaintiff argues that these cases are distinguishable because the ALJ in this case gave

10   "significant weight" to the opinion of Dr. Renfro, a consulting psychologist who opined that

11   plaintiff "is able to understand, remember, and carry out simple one or two-step job instructions,"

12   but "unable to do detailed and complex instructions," when determining plaintiff's mental RFC.

13   AT 581.  Plaintiff asserts that Dr. Renfro's opinion that plaintiff cannot carry out "detailed and

14   complex" instructions is in direct conflict with the DOT's requirements for Level 2 Reasoning,

15   which requires a claimant to be able to "[a]pply commonsense understanding to carry out _detailed_

16   by uninvolved written or oral instructions."  Dictionary of Occupational Titles, Appendix C, 1991

17   WL 688702 (4th ed. 1991) (emphasis added).  However, as a number of courts that have

18   addressed this issue have determined, while the DOT's definition for Level 2 Reasoning includes

19   the term "detailed" to describe the complexity of instructions to be carried out, those instructions

20   are also qualified as being "uninvolved."  See Meissl, 403 F. Supp. 2d at 984 ("Even more

21   problematic for [plaintiff's] position is that she ignores the qualifier the DOT places on the term

22   'detailed' as also being 'uninvolved.'  This qualifier certainly calls into question any attempt to

23   equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term

24   in the reasoning levels."); Salazar, 2008 WL 4370056, at *7; Charles v. Astrue, 2008 WL

25   4003651, at *5 (W.D. La. Aug. 7, 2008) ("In the DOT, a reasoning level of 2 means the worker

26   must be able to follow 'detailed' instructions which are 'uninvolved.'  Therefore, a DOT

27   reasoning level of 2 is consistent with a RFC to perform simple, routine, repetitive work tasks.").

28   /////

1    Moreover, while the ALJ did assign "significant weight" to Dr. Renfro's opinion, the ALJ

2    was not required to strictly adopt Dr. Renfro's determination that plaintiff could not carry out

3    "detailed" instructions as part of plaintiff's RFC as plaintiff seems to suggest.  The ALJ described

4    plaintiff has having the mental RFC to "perform simple and repetitive tasks," which was

5    supported by substantial evidence from the record including Dr. Renfro's opinion.[6]  Nowhere in

6    the ALJ's RFC determination is there an explicit limitation from "detailed" work.  Furthermore,

7    plaintiff contests that the ALJ erred by relying on the VE's testimony, which was based on the

8    ALJ's hypotheticals.  A review of the hearing transcript reveals that the ALJ's hypothetical

9    requested that the VE respond based on an individual that, among other limitations, was "limited

10   to simple, repetitive tasks and non-high production work."  AT 52.  As stated above, the court

11   agrees with the other courts that have found that such a limitation is consistent with the DOT's

12   definition of Level 2 Reasoning.  Therefore, the ALJ's reliance on the VE's testimony that

13   plaintiff could perform work as an addresser was not in error.

14   In sum, the ALJ's improper reliance on the VE's testimony that plaintiff could work as a

15   telephone quotation clerk and order clerk was harmless error because the ALJ properly relied on

16   the VE's testimony that plaintiff could also perform work as an addresser in support of his step

17   five determination that there were jobs that plaintiff could perform given her limitations.

18   Accordingly, plaintiff's request for remand on this basis is not well taken.

19   Plaintiff argues further that the ALJ's step five finding was erroneous because the

20   hypothetical the ALJ posed to the VE included a sit/stand option but did not sufficiently identify

21   the frequency at which plaintiff would need to alternate sitting and standing.  Plaintiff asserts that

22   this error requires remand so the ALJ can pose a proper hypothetical question to the VE.

23   An ALJ may pose a range of hypothetical questions to a vocational expert, based on

24   alternate interpretations of the evidence.  However, the hypothetical that ultimately serves as the

25   basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

26   _____

[6] In her motion, plaintiff does not contest the validity of the ALJ's RFC determination with regard
27   to her mental limitations.  Plaintiff's contentions regarding the ALJ's RFC determination are
limited to the ALJ's treatment of the medical evidence with regard to plaintiff's physical
28   impairments.

1   determination, must account for all of the limitations and restrictions of the particular claimant

2   that are supported by substantial evidence in the record as a whole.  Bray v. Comm'r of Soc. Sec.

3   Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the

4   claimant's limitations, then the expert's testimony has no evidentiary value to support a finding

5   that the claimant can perform jobs in the national economy."  Id. (citation and quotation marks

6   omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that

7   are not supported by substantial evidence."  Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir.

8   2006).  Furthermore, as the Ninth Circuit has observed, an ALJ may synthesize and translate

9   assessed limitations into an RFC assessment (and subsequently into a hypothetical to the

10  vocational expert) without repeating each functional limitation verbatim in the RFC assessment or

11  hypothetical.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that

12  an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured

13  restrictions related to concentration, persistence, or pace, because the assessment was consistent

14  with the medical evidence).

15        Here, the ALJ posed a hypothetical to the VE as to whether a sit and stand option would

16  affect the jobs that the VE testified a person with plaintiff's other limitations could perform.  AT

17  53.  Plaintiff argues that this hypothetical was erroneous because the ALJ failed to specify the

18  frequency at which plaintiff would need to alternate between sitting and standing.  Plaintiff argues

19  that this failure precluded the VE from testifying as to whether the frequency of changing

20  between sitting and standing would have eroded plaintiff's ability to perform the jobs the VE

21  testified plaintiff could perform in light of her other limitations.  However, even assuming,

22  without deciding, that the ALJ's hypothetical was lacking in this regard, plaintiff's counsel at the

23  administrative hearing questioned the VE regarding whether the frequency of alternating between

24  sitting and standing positions would impact the jobs the VE testified plaintiff could perform, to

25  which the VE testified that such alternation either would not impact the ability to perform the jobs

26  he suggested or could be accommodated.  AT 54-56.  While the VE testified that a requirement to

27  alternate between sitting and standing every 5 minutes would affect the jobs, he never testified

28  that such a limitation would completely preclude the ability to perform such a job.  To the

1   contrary, the VE's testimony suggested that a sit-stand option, even if it were as limiting as the

2   hypotheticals posed by plaintiff's counsel, could be accommodated in such jobs.  Id.

3   Accordingly, any insufficiency in the ALJ's hypothetical was cured by the questioning and

4   hypotheticals posed by plaintiff's attorney.  Therefore, any error in this regard would have been

5   harmless.  See England v. Astrue, 490 F.3d 1017, 1024 (8th Cir. 2007) ("Even if the hypothetical

6   fell short . . . , however, [plaintiff's] attorney posed to the VE a hypothetical that reflected these

7   limitations, in response to which the VE testified that there would still be jobs that [plaintiff]

8   could undertake.  Any inadequacy in the hypothetical was thus harmless."); Isaac, 2008 WL

9   2875879, at *4 (citing England, 490 F.3d at 1024).

        B.      The ALJ Properly Considered the Medical Opinion Evidence in the Record when

10

11                   Determining Plaintiff's RFC

12          Next, plaintiff argues that the ALJ improperly gave reduced weight to the opinions of Dr.

13  King and Dr. Hart, two of plaintiff's treating physicians.  Plaintiff also argues that the ALJ erred

14  in assigning greater weight to the non-examining physicians who reviewed plaintiff's medical

15  records.

16          The weight given to medical opinions depends in part on whether they are proffered by

17  treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

18  1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

19  greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

20  F.3d 1273, 1285 (9th Cir. 1996).

21          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

22  considering its source, the court considers whether (1) contradictory opinions are in the record,

23  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

24  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

25  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

26  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

27  830.  While a treating professional's opinion generally is accorded superior weight, if it is

28  contradicted by a supported examining professional's opinion (e.g., supported by different

1    independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

2    1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

3    any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

4    findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

5    minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

6    non-examining professional, without other evidence, is insufficient to reject the opinion of a

7    treating or examining professional.  Lester, 81 F.3d at 831.

8                            1.      Dr. King

9          Dr. King began treating plaintiff on December 22, 2011 as plaintiff's primary physician

10   and issued two opinions regarding plaintiff's ability to perform physical work-related functions

11   during the course of her treatment.  AT 540, 574-75, 658-59.  In the first opinion, dated February

12   21, 2012, Dr. King opined that plaintiff could not lift and carry objects weighting only a few

13   pounds and could not do so while walking.  AT 574.  Dr. King opined further that plaintiff could

14   stand and/or walk for a total of 30 minutes in an eight-hour workday due to having "significant

15   tibiotalar and subtalar [joint] arthritis," and could sit for a total of one hour in an eight-hour

16   workday.  Id.  Finally, she opined that plaintiff could never climb, balance, stoop, kneel, crouch,

17   or crawl.  AT 575.

18         In her second opinion, dated March 8, 2013, Dr. King opined that plaintiff could sit for a

19   total of no more than 45 minutes and could not stand or walk for any amount of time during an

20   eight-hour workday.  AT 658.  She further opined that plaintiff could frequently lift up to 5

21   pounds and occasionally lift up to 10 pounds.  AT 659.  She also opined that plaintiff could

22   perform "none to little" reaching, handling, feeling, pushing/pulling, or grasping during an eight-

23   hour workday.  Id.  Ultimately, Dr. King opined that plaintiff's impairments precluded her from

24   performing any full-time work at any exertional level.  AT 658.

25         In support of his determination to assign "little weight" to Dr. King's opinion, the ALJ

26   gave the following rationale:

27         Neither her own progress notes nor any other treating or consulting source has
             documented clinical findings or diagnostic studies that support the level of severity

28

that she had endorsed.  For example, she indicates significant stiffness in the subtalar joint, minimal tibiotalar motion.  Dr. King has noted that the claimant has not received any treatment for her back pain.  Even with the claimant's back pain and right ankle pain, Dr. King observed that the claimant "moves fairly well." Thus, little weight is given to her opinion.

AT 21 (citations to the record omitted).  These were proper reasons for discounting Dr. King's opinion that were supported by substantial evidence in the record.

First, the ALJ reasoned that Dr. King's own progress notes did not support her opinion that plaintiff's impairments limited her to the degree Dr. King opined.  This was a valid reason for discounting Dr. King's opinion.  Tommasetti, 533 F.3d at 1041 (holding that incongruities between a treating physician's objective medical findings and that physician's opinion constitute specific and legitimate reasons for the ALJ to reject that physician's opinion); see also Rollins v. Massanari, 261 F.3d at 856 (holding that the ALJ properly discounted treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings). Furthermore, substantial evidence from the record supported the ALJ's reasoning.  For instance, despite opining that plaintiff's back and right foot impairments were so severe as to limit plaintiff to standing or walking for no more than 30 minutes, or, as she later opined, not at any time during the course of an 8-hour workday, Dr. King's treatment notes indicate that plaintiff received no treatment for her back pain except for medication.  See AT 621.  Similarly, treatment notes from just prior to the date Dr. King issued her first opinion state that plaintiff "moves fairly well despite" the progression of her back and right foot impairments.  AT 622.

Furthermore, plaintiff's other treatment records further undermined Dr. King's opinions that plaintiff's physical impairments were extremely limiting.  Dr. King noted in her first opinion that plaintiff used a cam boot on her right foot, but that she was in the process of being fitted for an Arizona brace.  AT 574.  On April 19, 2012, after Dr. King's first opinion was issued, but prior to the date of her second opinion, Dr. Hong, another of plaintiff's treating physicians, noted that plaintiff's use of an Arizona brace and rocker bottom shoes "are helping [plaintiff] significantly." AT 630.  In particular, Dr. Hong observed that the shoes were significantly helping plaintiff

13

1   "even when she is out of the brace" and that plaintiff was "doing well."  AT 630-31.  Later, on

2   December 28, 2012, Dr. Hong observed that while x-rays revealed that there was "some slight

3   worsening of the arthritis space" in plaintiff's ankle and that "[t]here are significant post-

4   traumatic changes to the talus," plaintiff could still "maintain light activity levels."  AT 629.

5   Despite these further clinical findings indicating that plaintiff had responded well to the use of

6   moderate treatment and could still maintain some level of activity, Dr. King opined on March 8,

7   2013 that plaintiff could not walk or stand for any amount of time during an eight-hour workday.

8   AT 658.   The ALJ was permitted to rely on the fact that Dr. King's extreme opinions appeared to

9   conflict with this objective evidence that plaintiff still had some level of physical functionality as

10   a reason in support of his determination that Dr. King's opinion was entitled only to diminished

11   weight.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[A]n ALJ need not

12   accept a treating physician's opinion that is conclusory and brief and unsupported by clinical

13   findings.").  Accordingly, the ALJ's treatment of Dr. King's opinion was not in error.

14                           2.        Dr. Hart

15           Dr. Hart, a physiatrist, treated plaintiff on several occasions for her back and leg pain

16   beginning on July 25, 2012, and issued a written opinion regarding plaintiff's ability to perform

17   physical work-related functions on January 27, 2013.  AT 642-55, 656-57.  In his written opinion,

18   Dr. Hart opined that plaintiff could not sit for more than 30 to 40 minutes in an eight-hour

19   workday before she would begin to feel pain.  AT 656.  He further opined that plaintiff "[c]annot

20   walk longer than 5-10 minutes" in an eight-hour workday.  Id.  He also opined that plaintiff

21   would need to lie down or elevate her legs roughly every 30 to 40 minutes during the course of an

22   eight-hour workday.  Id.  He further opined that plaintiff could lift less than ten pounds

23   frequently, and would have difficulties lifting more than ten pounds.  AT 656-57.  Finally, Dr.

24   Hart opined that plaintiff had "[n]o limitation of the hands."  AT 657.

25   /////

26   /////

27   /////

28   /////

1    Determining that Dr. Hart's opinion was entitled to "little weight," the ALJ stated the

2    following:

3
     His own progress notes do not support the limits that he indicated that are
4    primarily based on the claimant's thoracic spine pain.  For example, his progress
     notes show loss of forward flexion on bending but no other loss of range of motion
5    of the lumbar or thoracic spine; no neurological deficits; only a slightly antalgic
     gait on the right; no positive straight leg raise testing; no evidence of muscle
6    spasms.  Further, no other treating or consulting source has documented clinical
     findings or diagnostic studies that support the level of severity that she has
7    endorsed.  Indeed, examinations in December 2011 and in January 2013, reflect
     that she had a normal gait.  For the foregoing reasons, little weight is given to the
8    opinion of Dr. Hart.

9

10   AT 21 (citations to the record omitted).  As with Dr. King's opinion, the ALJ determined that the

11   Dr. Hart's opinion was entitled to little weight because it opined limitations more severe than

12   what was warranted by the objective medical evidence in the record and by his own treatment

13   notes.  As discussed below, substantial evidence supported these reasons for discounting Dr.

14   Hart's opinion.

15        Similar to Dr. King's opinion, Dr. Hart opined that plaintiff was severely restricted in her

16   ability to stand and walk, stating that she was limited to walking for no more than 5 to 10 minutes

17   in an eight-hour workday.  AT 656.  This opinion was dated January 27, 2013, just prior to the

18   date of Dr. King's second opinion finding that plaintiff could not stand or walk for any amount of

19   time.  While Dr. Hart opined that plaintiff was somewhat less limited in her ability to stand and

20   walk than what was indicated in Dr. King's second opinion, the treating records discussed above

21   with regard to Dr. King also do not support the level of severity opined by Dr. Hart.  See AT 629-

22   31.

23        Furthermore, Dr. Hart's own treatment records suggest that plaintiff's physical limitations

24   were not to the degree of severity Dr. Hart opined.  For instance, Dr. Hart noted that plaintiff

25   claimed her pain arose primarily from her lumbar spine, but the results of an MRI Dr. Hart

26   ordered of plaintiff's back showed only mild degenerative disc disease "resulting in no central

27   stenosis or foraminal narrowing."  AT 654.  He also noted that a prior MRI of plaintiff's thoracic

28   spine showed only "old fractures with mild impingement with mild impingement on the thecal

1    sac, but no canal or foraminal stenosis." AT 649.  Furthermore, Dr. Hart's notes for both his

2    initial examination of plaintiff and a February 13, 2013 examination of plaintiff's musculoskeletal

3    system state that plaintiff exhibited full passive range of motion in her extremities, "a loss of

4    forward flexion on bending," but "no loss of motion for lateral bending or rotation," and "no

5    problem with extension."  AT 643, 648.  Both sets of notes also state that plaintiff exhibited full

6    motor strength and a gait that was only "slightly antalgic on the right."  AT 643, 648-49.  Such

7    findings do not suggest the extremely limited physical functional capacity Dr. Hart opined.

8    Accordingly, the ALJ properly relied on this evidence as a reason for discounting Dr. Hart's

9    opinion.

10                        3.      Non-treating Physicians

11           Plaintiff also argues that the ALJ's treatment of the opinions of Dr. King and Dr. Hart was

12   in error because the ALJ improperly based his RFC decision on the opinions of non-examining

13   physicians who reviewed plaintiff's medical records, rather than the opinions of these two

14   treating physicians.  This argument lacks merit.  As stated above, the ALJ discounted the opinions

15   of the two treating physicians because their restrictive functional determinations were not

16   supported by their own treating records and, more generally, the other objective medical evidence

17   in the record.  The ALJ did not diminish these physicians' opinions solely because they were at

18   odds with the opinions of plaintiff's non-examining physicians.  Furthermore, this same evidence

19   from the record reasonably supported the less restrictive opinions of the non-examining

20   physicians.  Therefore, the ALJ did not err in assigning greater weight to these opinions in

21   support of his RFC determination.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("We

22   have held that the findings of a nontreating, nonexamining physician can amount to substantial

23   evidence, so long as other evidence in the record supports those findings."); Andrews v. Shalala,

24   53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

25   /////

26   /////

27   /////

28   /////

1          C.      The ALJ's Determination that Plaintiff's Testimony Lacked Credibility was

2                  Supported by Substantial Evidence in the Record

3          Finally, plaintiff argues that the ALJ erred in assessing the credibility of plaintiff's

4   testimony because the ALJ determined that it was not credible without providing clear and

5   convincing reasons for doing so.

6          The ALJ determines whether a disability applicant is credible, and the court defers to the

7   ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

8   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

9   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

10  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

11  supported by "a specific, cogent reason for the disbelief").

12         In evaluating whether subjective complaints are credible, the ALJ should first consider

13  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

14  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

15  then may consider the nature of the symptoms alleged, including aggravating factors, medication,

16  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

17  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

18  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

19  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

20  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

21  01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

22  effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

23  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

24  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

25  in determining whether the alleged associated pain is not a significant nonexertional impairment.

26  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

27  on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

28  1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

17

1 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the

2 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

3 Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

4     Here, the ALJ found plaintiff's testimony concerning the intensity, persistence, and

5 limiting effects of her symptoms to be "not entirely credible" based on: (1) plaintiff's treatment

6 records not reflecting the level of severity plaintiff claimed; (2) the conservative medical

7 treatment plaintiff received; and (3) plaintiff's daily living activities not supporting the level of

8 debility claimed by plaintiff.  AT 18-20.  These were clear and convincing reasons for

9 discounting plaintiff's testimony that were supported by substantial evidence in the record.

10     First, the ALJ found that plaintiff's treatment records did not support the level of

11 impairment plaintiff alleged.  AT 18-19.  Plaintiff argues that this reason was improper because

12 the ALJ failed to specify which of plaintiff's complaints were contradicted by these objective

13 medical findings.  However, the ALJ did specify which of plaintiff's complaints were undermined

14 by this evidence, namely, plaintiff's complaints regarding the severity and limiting effects of her

15 back and ankle pain. See id.  The ALJ cited to numerous instances from over the course of

16 plaintiff's treatment history that indicate that plaintiff's back and ankle impairments imposed

17 physical limitations that were less severe than what plaintiff alleged.  Id.  Indeed, many of the

18 treatment records the ALJ referred to in her decision suggest that plaintiff's limitations were not

19 as limiting as plaintiff claimed.  See, e.g., AT 361, 541, 631, 648, 654.  While an ALJ may not

20 rely solely on the lack of objective medical findings to discredit a claimant, see Thomas, 278 F.3d

21 at 960, the ALJ in this case used the medical evidence in the record that conflicted with plaintiff's

22 allegations concerning the severity of her symptoms, particularly her claims of limitation related

23 to back and right ankle, to corroborate his determination that plaintiff's testimony was

24 exaggerated, rather than relying on it as the sole basis for his credibility finding.   Because, as

25 discussed below, the ALJ provided other clear and convincing reasons for finding plaintiff not

26 credible, the ALJ's discussion of inconsistencies between plaintiff's testimony and the medical

27 findings set forth in her treating records in support of his adverse credibility determination was

28 not in error.  Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole

basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Second, the ALJ reasoned that plaintiff's conservative course of medical treatment during the relevant period belied plaintiff's claims as to the debilitating severity of her limitations.  AT 19.  This reason properly supported the ALJ's decision to discount plaintiff's testimony,  see Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ's reference to medical evidence of the "conservative treatment" the plaintiff received supported the ALJ's adverse credibility determination because such evidence "suggest[ed] a lower level of both pain and functional limitation" than what the plaintiff alleged), and was substantially supported by the medical evidence in the record.  For instance, in early 2011, plaintiff's treating physician stated that plaintiff seemed to have "run of the mill" lower back pain and "[e]ncouraged stretching and core strengthening" as treatment for this condition.  AT 361.  While some of plaintiff's treating physicians discussed with plaintiff the possibility of surgery for her right ankle impairment, they also generally encouraged non-operative measures such as physical braces, rocker shoes, and pain medication, and assessed similar measures to manage her back pain.  E.g., AT 629-34, 639, 641, 644, 649, 675-76.  Notably, plaintiff herself stated to her physicians that her pain and overall condition generally improved as a result of these conservative treatments and insisted on the further use of moderate, non-surgical treatment for her back and right ankle impairments.  See AT 629, 631, 634.  The ALJ highlighted this substantial evidence in his discussion of plaintiff's credibility and properly determined that it supported a finding that plaintiff's testimony regarding the extent of her limitations was not fully credible.   AT 19-20.

Finally, the ALJ determined that plaintiff's daily living activities generally undermined her claims that her impairments limited her to the degree of dysfunction she alleged.  In support of this determination, the ALJ referenced plaintiff's written statement reports and statements she made to her physicians that described plaintiff as able to prepare meals, do her own laundry, clean her kitchen, shop, and drive for up to 20 miles at a time.  AT 20, 227, 241-42, 579.  The ALJ also highlighted a report that plaintiff was acting as her sister's main caregiver as recently as early February of 2013, just over a month prior to the administrative hearing where plaintiff testified as

1  to the disabling nature of her impairments.  AT 20, 640.

2         Plaintiff argues that the ALJ's reasoning based on this evidence was flawed because these

3  activities do not relate to actual workplace functions.  However, the ALJ did not suggest that

4  these activities meant that plaintiff could perform certain jobs or work-related activities.  Rather,

5  the ALJ recognized that this evidence suggests that plaintiff's allegations at the hearing regarding

6  the severity of her limitations were exaggerated.  See AT 20.  This conclusion was drawn from

7  the above substantial evidence regarding a claimant's living activities and constituted proper

8  support for the ALJ's adverse credibility determination.  See Valentine v. Commissioner of Social

9  Security, 574 F.3d 685, 693 (9th Cir. 2009) (holding that the ALJ's recognition that the evidence

10  of claimant's daily living activities undermined the claimant's testimony regarding the severity of

11  his limitations constituted a clear and convincing reason in support of the ALJ's adverse

12  credibility determination).

13         The ALJ provided multiple clear and convincing reasons for diminishing plaintiff's

14  subjective complaint testimony, all of which were supported by substantial evidence from the

15  record.  Accordingly, the ALJ did not err in making his credibility determination with regard to

16  plaintiff's testimony.

17  V.     CONCLUSION

18         For the reasons stated herein, IT IS HEREBY ORDERED that:

19         1.  Plaintiff's motion for summary judgment (ECF No. 16) is denied;

20         2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted;

21  and

22         3.  Judgment is entered for the Commissioner.

23  Dated:  August 10, 2015

24                                        _____
                                          CAROLYN K. DELANEY
25                                        UNITED STATES MAGISTRATE JUDGE

26

27

28  11 Hernandez.ss

20